FRANCIS S. MATHEWS, RESPONDENT, v. HIRAM EDDY, APPELLANT.

DESCRIPTION IN DEED.—A clerical error in the description of a tract of land will not vitiate a deed where the intent of the parties can be ascertained with certainty from the instrument, when considered in connection with the situation of the parties and of the subject-matter.

JUDGMENT SALE OF MORTGAGED PREMISES.—Where a judgment was obtained in an action at law upon a promissory note, and a tract of land, which had been mortgaged to secure the note, was sold on the execution without foreclosure of the mortgage, and the sale had been confirmed: *Held,* that the sale is not void, and that it cannot be attacked collaterally.

ORDER CONFIRMING SHERIFF'S SALE.—An order of Court, confirming a Sheriff's sale on execution, may be regarded as a final adjudication touching the regularity of all proceedings taken in the execution of final process.

APPEAL from Polk County.

This was an action of ejectment to recover certain real property which each of the parties claimed to own in fee. The land in dispute is described in the pleadings as follows: "Beginning twenty chains north, and fourteen and thirteen one-hundredths chains west of the quarter-section corner-post on the east and west line, between sections 9 and 16, in township 9 south, range 4 west, and running thence west forty-five and eighty-seven one-hundredths chains; thence south forty-three and sixty one-hundredths chains; thence east forty-five and eighty-seven one-hundredths chains; thence north forty-three and sixty one-hundredths chains, to the place of beginning."

The cause was tried by the Court without the intervention of a jury.

On the trial, the plaintiff having shown title in his grantor, and introduced mesne conveyances from his grantor to himself, rested his case, and the defendant offered and read in evidence a judgment for money, rendered in the Circuit

Court against the plaintiff's grantor, on execution issued to enforce the judgment, the Sheriff's return thereon of a sale of the premises to satisfy the judgment, and a Sheriff's deed executed in pursuance of the sale to one Marshall, under whom the defendant claims; all of which were received subject to the plaintiff's objection.

The Sheriff's return on the execution shows that only three notices of sale had been put up; that the property was sold at the court-house in Polk County, where the land was situated, and it contains the following recital, "There being occupant of the premises." The defendant offered to prove further that at the time of the levy and sale the plaintiff had no personal property and that no person was occupying the premises, but the Court refused to permit such proof.

The defendant also offered in evidence a deed from Marshall to the defendant in which the land conveyed is described the same as the tract in controversy, except that in describing the beginning of the boundary, the following words are used: "Beginning twenty north, fourteen and thirteen one-hundredths chains west of the quarter-section post," etc. This testimony was rejected.

In rebuttal, the plaintiff was allowed to prove that the note upon which the judgment was rendered, under which the execution sale to Marshall was had, was secured by a mortgage upon the premises in dispute and that such mortgage had not been foreclosed.

Judgment was rendered in favor of the respondent.

The other facts are stated in the opinion of the Court.

*Benj. Hayden and Boise & Willis*, for Appellant.

Plaintiff in an action of ejectment must recover on the strength of his own title. (Taylor on Ejectment, 63, 72, 577, 774.)

A recital of service in a judgment is conclusive as to service. (34 Cal. 391.)

The equity of redemption may be sold on execution to satisfy the mortgagee's debt without a foreclosure. (15 Ohio, 467; *Pierce* v. *Potter*, 7 Watts, 475; *Porter* v. *King*, 1 Green-

leaf, 297; 2 Johns. Ch. 130; 7 Paige, 438; 1 Hilliard on Mortgages, 417.)

*R. S. Strahan, John Burnett* and *John Kelsay,* for Respondent.

Notice of the sale on execution was required to be given by posting four notices. (Laws of Oregon of 1855, p. 124, § 20.)

The Sheriff who sells under a judgment and execution exercises a statutory power, by virtue of which alone his deed can operate upon the title to the land sold. (11 N. Y. 76; 7 Abb. Dig. 298; 35 Mo. 225.) The statute is imperative as to the notices, and no title can pass unless the law is strictly complied with. (20 Barb. N. Y. R. 149; 7 Conn. 229, 350; 5 Conn. 592; 42 Maine, 414; 13 Mass. 487; 5 Cow. R. 400; 7 Cow. R. 229.) Parol evidence will not be admitted to cure a defect or supply an omission in the officer's return. (2 Mass. 154; 7 Id. 388; 9 Id. 241; 13 Id. 487.)

A Sheriff's deed that does not recite the recovery of a judgment, the issuing of execution, and the posting up of notices of sale as required by law, is fatally defective. (24 Cal. 418; 25 Id. 230; 4 Pet. R. 88; 9 Curt. U. S. R. 8; 11 Wend. R. 436.) Nor is the plaintiff estopped by recitals in the deed. (1 Cal. Dig. 246, § 66.) A confirmation of the sale by the Court did not make the deed valid. (1 Cal. Dig. 250, § 114; 24 Cal. 585.)

A deed to be valid must be certain to a common intent, so that a surveyor can find the corners and trace the boundaries. If the description is illegible or unintelligible, the deed is inoperative. (18 Johns. R. 107; 13 Id. 97, 537; 10 N. Y. 509.)

An equity of redemption may be sold under legal process only in favor of third persons, or other creditors of the mortgagor than the mortgagee. (1 Hilliard on Mortgages, 407; 17 Pick. 139; 4 Ben. Monroe, 143; 2 Washb. on Real Prop. 1521; Id. 646; 24 Mo. 249: 23 Miss. R. 206; 24 Ala. R. 476; 2 Doug. R. 176; 4 Eq. Dig. 672; 7 Dana R. 66.)

By the Court, Upton, C. J.:

In this case it is conceded that the plaintiff, who is respondent in this appeal, is entitled to the premises in controversy, unless the defendant has acquired title through the sale on execution under the judgment against the plaintiff's grantor, S. B. Mathews, in favor of Henry Marshall. One of the objections to the defendant's chain of title is that the deed from Marshall to the defendant is void for want of a sufficient description of the land it purports to convey.

All the other deeds offered in evidence describe the initial point by the words "beginning twenty chains north and fourteen and thirteen one-hundredths chains west" of a certain post, but the deed objected to uses the words "beginning twenty north, fourteen and thirteen one-hundredths chains west" of the post.

The language first above quoted occurs in all the preceding title-papers under which the respective parties claim, several of which have been read in evidence; it also occurs in the Sheriff's return on the execution, and in the deed executed by the Sheriff to Marshall, the defendant's grantor. A comparison of the deed under consideration with other deeds put in evidence shows an identity of language in every other descriptive particular, and the exact and literal correspondence of this deed in so many minute particulars with the other deeds leads to the conclusion that the draftsman in writing this deed attempted to copy from some one of the antecedent title-papers, or from the description contained in them; in other words, that he was engaged as the agent of the constructing parties in an attempt to describe the tract of land in question in the language employed in the old deeds. If that was the intent, the question is, has he made a writing which, being read by the light of surrounding circumstances, will identify the property sought to be conveyed? We find the discrepancy in language consists in omitting the word "chains" and the word "and" from the description contained in other deeds under which each of these parties claim title.

It is said in argument that the Court has no power to add to the language employed by the parties in their written contract, and it is correctly said that it is the province of the Court to ascertain the meaning of the language of the written contract, and not to make a contract for the parties.

If we attempt to find a meaning different from that claimed by the defendant, we shall not succeed without some liberality of construction. There is no force in the suggestion that "20.00" may refer to the course and not to a distance; the course being unqualifiedly north, cannot be either 20° east or 20° west of north, and we are driven to the alternative either to treat the description of the initial point as meaningless, or to resort to recognized rules of construction, to ascertain from the language of the deed, if possible, what the parties intended.

It is not sufficient that the interest can be proved by evidence which is independent of the language contained in the instrument. But if surrounding circumstances throw such light on the subject and on the language employed, as to leave no doubt what parcel of land is referred to in the written description, proof of those circumstances is not proof tending to contradict the writing. These proofs show that the grantor had previously bought a parcel of land, the boundary lines of which correspond exactly in course and in length with those mentioned in this deed. By the letter of these descriptions each deed must refer to the same initial point of boundary, or the one initial point must be directly north or south of the other, and there is nothing in the instrument, or in the circumstances, indicating the existence of more than one parcel that can answer to this description. When examined by the light thus thrown upon the subject, the instrument shows to a moral certainty what parcel of land was the subject of this contract.

Under such circumstances, the substance of the written instrument is to be regarded, notwithstanding clerical errors or inaccuracy of expression. In construing contracts, Courts are sometimes required to reject words (27 Maine, 285), or insert them (17 Vt. 479, 486), or to restrict the meaning of a word (12 Mass. 330; 13 Pick. 284; 11 Wheat.

412), or to substitute words (11 Vt. 366), or to repeat words (8 Pick. 563).

A mere clerical error will not vitiate a contract where the interest of the parties can be ascertained with certainty from the instrument, and even when there is no clerical error, inasmuch as the same words are not always employed to express a given idea, and given words and phrases are not used by all persons, or by the same person, in all circumstances, in the same sense. Particular expressions must be compared with the context, and if it can be ascertained with certainty, from the instrument, what the parties intended, the instrument must be so construed as to give effect to the intent.

In the deed under consideration, the "chains" is the only unit of distance mentioned. The word "chains" is frequently used, and it occurs once in the description of the initial point. The failure to repeat it would be no departure from common modes of expression, and would scarcely attract attention if the word "and" had been retained where it occurs in this connection in the preceding deeds.

It is morally certain, from the language of this deed, when examined in connection with the situation of the parties and of the subject-matter, that in executing the deed the parties were contracting in reference to the land in controversy. This is the same degree of certainty that the most precise and formal language would produce, and is all that is required to constitute a valid contract.

The cases cited by the respondent contain nothing in conflict with the views here expressed. The first two of these, *Jackson* v. *Rosenfelt* (13 John. 97), and *Jackson* v. *Livingston* (Id. 537), are to the effect that on a sheriff's sale no property will pass under the general description, "all the lands and tenements of the defendant, situate, lying and being in the Hardenburg patent." In *Jackson* v. *Ransom* (18 John. 107), it was held that where a lot is once sufficiently described, mentioning the lot by an erroneous number does not vitiate the deed.

In *Peck* v. *Mallams* (10 N. Y. 509), a sheriff's deed recit-

ing that he exposed to sale a parcel of land, describing it by boundaries, supposed to contain four hundred acres, "whereof one hundred acres was struck off to J. W.," and then proceeding to grant to J. W. "the before-mentioned premises," was held void for uncertainty. The defects in the last and in the two first deeds referred to are such that evidence of surrounding circumstances will not render the language of the instrument certain as to the parcel of land sold, but we do not think the deed under consideration is subject to that objection.

Another objection to the sufficiency of the defendant's title arises out of the circumstance that the judgment upon which the Sheriff's sale was based, was obtained in an action at law upon a promissory note, to secure the payment of which a mortgage had been given on the same lands that were sold. It is claimed that the mortgaged premises were not subject to such sale. The sale under execution was made June 21, 1862. This was before the present Code took effect and some nine years before the commencement of this action. The Court is called upon to determine whether such a sale made under the statute of 1854 shall be treated as void, assuming that the statute did not contemplate sales of mortgaged premises without foreclosure of the mortgage; that the practice under the statute of 1854 should have been that which prevailed when the mortgage was a conveyance of the legal title; and that the right of the mortgagee did not merge in the judgment when he proceeded by action on the note or bond which the mortgage is given to secure; the question arises whether the departure from regular practice rendered the sale absolutely void, and the Sheriff's deed a nullity.

In *Waller et al.* v. *Tate et al.* (4 B. Monroe 143), the assignee of notes secured by mortgage, who held them as collateral security, had proceeded at law and sold the mortgaged premises and had applied the proceeds in part payment. The mortgagee redeemed the notes from the assignee and brought suit to foreclose the mortgage for the balance due on the notes. Four years had elapsed since the sale, and the purchaser at Sheriff's sale had conveyed

a part of the land to another. The Appellate Court reversed a decree which directed the land to be sold to satisfy the mortgage, after first refunding the amount that had been bid for the part thus conveyed, and directed the bill to be dismissed as to the latter purchaser.

It would seem that the proceeding on the execution was not deemed void, notwithstanding that under the law then prevailing the mortgage conveyed the legal title.

Cases are cited from Massachusetts in which it is held that the mortgaged premises should not be sold except upon foreclosure. In these cases the ruling was put expressly on the ground that a purchaser at a sale under a decree of foreclosure would, by the statute, have two years in which to redeem, and a purchaser under a judgment would have a much less time. Such difference as to the time in which the premises may be redeemed does not exist in this State, and did not exist at the time of making the sale which is now under consideration. (*Atkins* v. *Sawyer*, 1 Pick. 351; *Washburn* v. *Goodwin*, 17 Pick. 137.)

In the cases cited by the respondent, to show that in the State of New York a judgment creditor is not entitled to sell mortgaged premises under a judgment thus obtained, it was held that the sale, although erroneous and voidable, was not void, and the title thus obtained was held valid.

The confirmation, in this case, was made in November, 1862, and the regularity of the proceedings is now questioned for the first time, being attacked collaterally in an action at law. If the Circuit Court has power in this action to determine the questions of fact, as to the existence and character of the mortgage, and the question of law as to its being a ground for exempting the mortgaged premises from sale, the same questions must have been within the jurisdiction of that Court when they became pertinent on the motion to confirm the sale. On the hearing of that motion the Court was proceeding within its jurisdiction, and if there had been such departure by the Sheriff from ordinary modes of proceeding that it was error to confirm the sale, and if the sale would have been enjoined in equity, or set aside, on motion by the Court out of which the execution issued,

it does not follow that the proceeding was void. In the case under consideration there was an execution directing the Sheriff to sell the debtor's property, and it does not appear that it was shown to the Court, or to the officer, that the land had been mortgaged to secure the debt, nor that any objection was made to the confirmation. If a reason existed why this particular parcel of land should not be sold, the debtor should have brought the matter to the attention of the Court.

Upon this point and upon some other alleged irregularities in the mode of conducting the sale, the respondent's argument proceeds on the assumption that the power to sell on execution is to be classed with those powers in which the jurisdiction and authority is created by and derived solely from the statute, that any departure from the mode prescribed renders the whole proceeding void. In this argument little weight is given to that feature of our practice which subjects these proceedings to judicial examination.

The practice at the time of the sale in question, as well as the present practice, contemplated a judicial determination of all questions of regularity in the execution of the process, and the decision of a Court having jurisdiction is conclusive of the point decided, unless reversed. (*Nagle* v. *Macy,* 9 Cal. 426; *Tustin* v. *Gaunt,* present term, *post.*)

The same may be said in regard to objections made to the form of the Sheriff's deed, which fails to recite in direct terms the rendition of the judgment, but in place of doing so recites the substance of the execution and the proceedings upon the levy and sale. There is also an omission of the word "no" in the Sheriff's return of the sale. The statute then in force required lands that were occupied to be sold on the premises, and unoccupied lands to be sold at the court-house door. By what seems beyond a doubt a clerical error, the return, which shows a sale at the court-house door, contains this clause: "There being occupant of the premises."

Another point is made that the recitals in the Sheriff's return and in the deed, in regard to posting notices "in

three public places in this county," do not show a compliance with the statute which requires (Stat. 1855, p. 123, ₰ 18) notice to be posted "in three public places of the county where the property was situated, and also where the property is to be sold." The respondent construes this as requiring the posting of notices in four places.

Conceding that the language imports that one of the notices should be at the place of sale, rather than that the three notices should be in the county where the land is situated and where it is to be sold, the letter of the law may be complied with by posting at three public places, one of them being the place of sale.

But aside from any such question, on the principle above suggested, the construction of the statute was a question for the Court on the motion for confirmation; and the decision of the Court confirming the sale, even if it was erroneous, ought not to be treated as a nullity. (*Griffith et al.* v. *Bogert et al.*, 18 How. 158.)

The effect of an order or decree of confirmation having been involved in some other cases heard at this term, as well as in this case, the subject has been very fully discussed by counsel, and after a very full and careful examination of all the authorities presented on this point, this Court entertains the opinion that without doing violence to any principle of law, an order of confirmation may be regarded as a final adjudication, touching the regularity of all proceedings taken in the execution of final process.

If confirmations are not to be thus respected, an approval under the Act of January 7, 1854, or an order of confirmation under the present Code, is an idle ceremony, and the statute which requires such approval is enacted to no purpose. By giving that respect to these decisions which should attach to the final orders, judgments and decrees of judicial tribunals, titles to real estate are fortified and holders of real property are relieved from the danger of vexatious litigation, which would become formidable if every judicial sale should be treated as the exercise of a naked statutory power in which the title must rest on a literal

compliance with the statutory directions that may from time
to time be enacted, regulating the mode of conducting sales.
A new trial should be granted.